UNITED STATES v. CASERTA.

No. 10817.

United States Court of Appeals Third Circuit.

Argued Oct. 17, 1952.

Decided Nov. 21, 1952.

Jacob Kossman, Philadelphia, Pa., for appellant.

Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a conviction for income tax evasion under 26 U.S.C. § 145 (b).[1]

### I.

The prosecution was confronted here with a situation not unusual in income tax prosecutions. If the taxpayer had done what he was legally required to do, keep a record of his income and expenditures, the case would be comparatively easy. The question then would be the accuracy of the records kept. The taxpayer here involved kept no records. How is his violation of income tax obligation to be proved?[2] In the effort to ascertain a non-bookkeeping taxpayer's liability, many cases have discussed the requirements which must be met on the so-called net worth theory.[3] This theory is in effect that if a taxpayer's net worth has increased during a given period in an amount greater than his reported income for that period, there must be a discrepancy in his income tax return and payment.

An outgrowth of this net worth method is the "expenditure" test involved in this case.

[1] "Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

[2] Under section 41 of the Internal Revenue Code " * * * if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation [of net income] shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *"

[3] Brodella v. United States, 6 Cir., 1950, 184 F.2d 823; Bell v. United States, 4 Cir., 1950, 185 F.2d 302, certiorari denied 1951, 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671; United States v. Fenwick, 7 Cir., 1949, 177 F.2d 488; Bryan v. United States, 5 Cir., 1949, 175 F.2d 223, affirmed 1950, 338 U.S. 552, 70 S. Ct. 317, 94 L.Ed. 335; United States v. Chapman, 7 Cir., 1948, 168 F.2d 997, certiorari denied 1948, 335 U.S. 853, 69 S. Ct. 82, 93 L.Ed. 401.

The theory of it is simple, though its application may become difficult. It starts with an appraisal of the taxpayer's net worth situation at the beginning of a period. He may have much or he may have nothing. If, during that period, his expenditures have exceeded the amount he has returned as income and his net worth at the end of the period is the same as it was at the beginning (or any difference accounted for), then it may be concluded that his income tax return shows less income than he has in fact received. Of course it is necessary, so far as possible, to negative nontaxable receipts by the taxpayer during the period in question. The cases show, however, a rather surprising rule that when the discrepancy between increased net worth and reported income is shown, the burden of explanation shifts to the taxpayer, at the same time repeating the usual criminal law rule that the burden throughout a criminal case is upon the prosecution.[4] We do not, however, get into this particular ramification in the case under discussion, for the prosecutor offered proof negativing receipts for nontaxable sources such as gifts, inheritance and so on.[5]

The expenditure method of proof of income received judicial approval in United States v. Johnson, 1943, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546. We think that with this case as a foundation some of the vacillation apparent in Courts of Appeals opinions[6] with regard to proof in

tax evasion cases should now be disregarded.

What constitutes expenditure? The natural answer is: What a man spends, of course. How does one show expenditures? If a man has a bank account and puts everything he receives into the account, his expenditures are pretty well shown by what he spends it for in checking it out. But suppose he withdraws from his bank account a sum in cash, a check made payable to himself or an impersonal payee. Does that show expenditure? It may well do so if we proceed on the ordinary assumption that people do not draw money from bank accounts unless they are going to spend the money for something. On the other hand, suppose a man writes a check to "cash" for $500. and the same day buys an overcoat for $100. and a suit of clothes for the same amount. Now what do we charge him with, an expenditure of $700.? If cash withdrawals from a bank account are to be treated as cash receipts to a person, surely it is incorrect to charge individual items for which he has paid cash to his list of expenditures unless it is shown that the cash bank withdrawals had nothing to do with the individual items. Otherwise, a man doubles his taxable income when he writes a check for "cash" and spends the money he gets from his bank. This would be a very happy way of increasing one's income if it could be done.

4. See Schuermann v. United States, 8 Cir., 1949, 174 F.2d 397, certiorari denied 1950, 338 U.S. 831, 70 S.Ct. 69, 94 L.Ed. 505, rehearing denied 338 U.S. 881, 70 S.Ct. 156, 94 L.Ed. 541; cases cited note 3 supra.

5. The prosecution introduced evidence that the defendant had never filed an income come tax return prior to 1945, and that he had told the investigating tax agent that he borrowed no money prior to 1944, held no money belonging to others, and received no gifts or inheritance of any kind. Evidence was also introduced to show that defendant claimed his wife and mother-in-law as dependents, and that they contributed nothing to defendant's available resources.

6. In United States v. Fenwick, and in Bryan v. United States, note 3 supra, the court stated that when the government relies on increase net worth and expenditures in excess of reported income it must produce evidence that excludes all other possible available sources from which additional funds expended could have been derived. This rule was limited in Bell v. United States, Schuermann v. United States, and Brodella v. United States, supra notes 3 and 4, the courts there being unwilling to impose on the government an "impossible burden of proof" in cases proceeding on the expenditure or net worth theories.

■ All of this seems so obvious that we have had difficulty in believing that the government's case proceeded on a different theory here. But the record does show that this defendant was charged, in the evidence tending to show what his income was, with both cash withdrawals and cash purchases. It was not shown that the cash withdrawals did not go for cash purchases.[7] Furthermore, it is denied, even on appeal, that this was an incorrect method.

The trial judge told the jury that they must not duplicate items. We do not think this is enough in the case at bar in view of the testimony just quoted.

What has just been said demonstrates such fundamental error that defendant is entitled to a new trial.

## II.

■ Defendant in the court below and again here presses the point that the evidence is not sufficient to sustain a conviction. With this we disagree. A verdict of guilty was sustainable if the jury believed the prosecution's witnesses and disbelieved those of the defendant.

## III.

■ The defendant also complains that he was not allowed to produce an expert witness to controvert the expert witness for the Government. The decisions have gone a great distance in allowing expert witnesses to aid a jury in these prosecutions for income tax violations.[8] The reason is pretty clear. By their very nature the cases are full of complicated figures. An expert's testimony helps the jury understand the problem even though the final responsibility for answering the questions involved remains with them.[9]

But if the government is to be permitted to endeavor to establish a taxpayer's criminal responsibility through expert testimony, the privilege of combatting that

7. In computing the defendant's taxable income the government included the face amounts of checks drawn to "cash" totalling $2850 during 1948, and $742.60 during 1949. It also included cash payments of $1900 for a boat, $300 to the Clerk of Court, $783.10 to General Motors, $1319.98 to the Powell-Gardner Buick Co., and many others. The investigating revenue agent testified that in cases where he had been able to trace the proceeds of a check drawn to "cash" into an identifiable cash purchase, the resulting duplication was eliminated. Where tracing proved impossible, however, and where an analysis of the respective dates and amounts of the checks and cash purchases showed no discernable pattern, duplication was assumed not to exist and both checks and purchases were included. The following are excerpts from the trial transcript:

"Q. (by defense counsel on cross-examination). Can you state for a fact that Mr. Caserta did not use any of these cash withdrawals in payment of the cash expenditures * * * for the years 1946, 1947, 1948, and 1949, wherever they occur? A. (by the investigating revenue agent). No, sir, I cannot state that as a fact.

"Q. In your tax assessment or analysis, then, you did not credit the cash withdrawals against the cash expenditures; is that correct? A. No, sir.

"Q. Were you able to relate or trace these cash withdrawals to any other cash expenditure not listed by you? A. If I didn't list it, Mr. Kossman, I guess I couldn't have traced it to that."

\* \* \* \* \*

"Q. Now, in determining his income for the year 1947 did you add the cash payment of $50 fine that he had made, and other cash items, $226.50, $29.75 for his wife, $10. to the church, and I think that is all—$306.27. Did you add that to the $4800 [checks drawn to cash] in order to arrive at his expenditures; is that correct? A. (by another internal revenue agent). That is correct."

8. United States v. Johnson, 1943, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Augustine, 3 Cir., 1951, 189 F.2d 587, 589-90.

9. See Wigmore, Evidence § 1923 (3d ed. 1940), cited by this court in United States v. Augustine, supra. In United States v. Johnson, supra, the Supreme Court said that testimony of an expert witness regarding the defendant's income and expenditures did not invade the province of the jury where all the evidence so testified to was before the jury and the jury could not have been misled into thinking they had to accept such testimony as determinative of the issue of tax liability.

testimony by expert testimony on his side is open to the defendant. This is a matter of common fairness and common sense. The difficult question is the initial one, namely, whether the subject is a suitable one for expert testimony. That being decided affirmatively, it follows that, as in other cases, the testimony of one expert may be matched against that of another.

The defendant's proffer of his expert was calculated to confuse the judge. He offered the expert for a number of purposes and certainly among them was involved a criticism of the government's legal theory. The court properly told counsel that the law of the case was for the judge and not for an expert witness. On the other hand, the defendant was entitled to an expert witness on any points on which the prosecution was entitled to the use of expert testimony. We think it likely that the defendant did not get as much as he was entitled to although repeated reading of his offer and the colloquy which accompanied it still leaves doubt as to the nature and scope of the offer and extent of the judge's denial.

### IV.

■ Defendant complains that his counsel was unduly restricted on a cross-examination of the government's witness. This point has no merit. Good latitude was allowed by the trial judge in the cross-examination which was pressed far beyond the limits of the patience of most human beings whether on a bench or not. The scope of cross-examination is in general subject to the trial judge's discretion although in a criminal case he must be careful not to restrict it unduly. There was no such restriction here.

### V.

■ Complaint is also made of another ruling in connection with the testimony of the government's expert. He had a memorandum in his hand which he used to refresh his memory while testifying. Counsel for the defendant was refused the right to have the jury see this memorandum.

We doubt whether this objection is sufficient on which to found a reversal if that were the only thing there was in the case. A reading of Wigmore, however, will show that the refusal to let the jury see the memorandum was incorrect. It is to be pointed out that this is not an instance of what Wigmore calls "past recollection recorded" in which the memorandum itself is admissible as evidence to prove what is said therein. A writing used to refresh the memory of the witness does not, itself, become evidence for the party whose witness uses the memorandum. His evidence is the testimony which he gives in court. But the memorandum which he uses to refresh his own recollections at the time of testifying is something that counsel for the other side can see upon demand and which the jury is entitled to see for whatever effect it may have upon the testimony given by the witness who has been aided by the document. This is fully discussed in Wigmore on Evidence, Sections 762–765 (3d. ed. 1940).

### VI.

■ Another complaint of the defendant is that the government introduced evidence of other offenses. This testimony was to the effect that the defendant had paid fines for the violation of state laws on two occasions. The defendant now says that this was erroneous and cites the well-known rule to the effect that a man is not to be convicted of one crime by evidence showing that he has been convicted of another. That was not the reason for the use of the testimony in this case. The prosecution was endeavoring to show what the defendant spent his money for. It might have been theater tickets, it might have been automobiles (as it was), or a boat (as it was) or paying it out to the Commonwealth of Pennsylvania in fines. If part of defendant's income was spent for this purpose the government may show it as part of the picture of defendant's expenditures which it was required to make.[10] There is nothing to the defendant's point.

---

10. In general see Wigmore, Evidence, §§ 215, 216 (3d ed. 1940). As applied to prosecutions for income tax violations see O'Brien v. United States, 7 Cir., 1931, 51 F.2d 193, certiorari denied 284 U.S. 673, 52 S.Ct. 129, 76 L.Ed. 569; Capone v. United States, 7 Cir., 1931, 51 F. 2d 609, certiorari denied 284 U.S. 669, 52

## VII.

■ Defendant claims error in the refusal of the trial judge to compel the prosecution to give him a bill of particulars prior to trial. What has been said by our brethren in the Seventh Circuit applies to the situation here. In United States v. Chapman, 7 Cir., 1948, 168 F.2d 997, the court pointed out that in a case in which the government proposed to use the expenditure theory, the most that the defendant could be entitled to prior to trial was the fact that the prosecution was to proceed upon this theory. The absence of more particularized information was due to the defendant's failure to keep the records he was required to keep and that fault could not be charged to the prosecution. The same reasoning applies here. The defendant now knows all the government knows about the theory of the case and nothing further regarding the bill of particulars can come into it.

■ The earlier decisions in this circuit, with regard to bills of particulars in such cases, are predicated upon quite a different factual background.[11] It should be remembered also that the granting of a bill of particulars is largely left to the discretion of the trial judge.[12]

## VIII.

■ Finally, the defendant complains about the reading, against his objection, of portions of his selective service questionnaire. It is not necessary for us to discuss the purpose for which this evidence was introduced. We will assume that it was relevant testimony if otherwise competent.

This point bothered the trial judge who discussed it in his opinion. See 104 F.Supp. 661. The questionnaire involved here contained at the bottom a statement to the effect that the information was confidential except for certain specified uses by the government.[13] We think it is a matter of importance that this assurance to registrants that the information they give is to be treated as confidential should be kept in good faith unless the registrant, himself, consents to its disclosure. It has been uniformly held that a third party cannot compel the production of these questionnaires unless the registrant consents.[14] Now it is true that there is a regulation which permits the disclosure and examination of such information to the employees of the local board, medical advisory board and so on ending up with the phrase "proper representatives of the state director of selective service or the director of selective service, United States attorneys and their duly authorized representatives." 32 Code Fed.Reg. § 605.32 (1943), as amended, § 1606.32(a) (4) (Rev.1951).

It is argued from this that since the United States attorney may read a registrant's questionnaire he may introduce it in evidence in a trial in which the United States is the prosecutor. If this were a case involving alleged violation of selective service law we might be forced to accept the argument. The same would be true if a

---

S.Ct. 44, 76 L.Ed. 566; United States v. Commerford, 2 Cir., 1933, 64 F.2d 28, certiorari denied 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502.

11. In Singer v. United States, 3 Cir., 1932, 58 F.2d 74, we held it error to dismiss defendant's motion for a bill of particulars to explain the allegations in the indictment of unreported "income from partnership" and "other income." The result there was the introduction at the trial of extensive evidence of income not properly attributable to the defendant, with consequential prejudice to him even though it was later stricken. Most of the cases require the prosecution to give a bill of particulars to explain an indictment which alleges the source of income, e.g., "sales," "rent,"

· United States v. Hall, D.C.Conn.1943, 52 F.Supp. 798, or to explain the fact that the figures alleged in the indictment do not conform with the defendant's books, United States v. Empire State Paper Corp., D.C.S.D.N.Y.1934, 8 F.Supp. 220. No such elements exist here.

12. Wong Tai v. United States, 1927, 273 U. S. 77, 47 S.Ct. 300, 71 L.Ed. 545.

13. "Family Status and Dependents (Confidential except as to names and addresses)." Information as to earnings is also marked "confidential."

14. 4 Moore's Federal Practice 1168–1169 (1950 ed.); Gray v. Bernuth, Lembcke Co., E.D.Pa.1948, 8 F.R.D. 358; Federal Life Ins. Co. v. Holod, D.C.M.D.Pa. 1940, 30 F.Supp. 713.

man were being prosecuted for perjury for false statements in his questionnaire. See 32 Code Fed.Reg. § 1606.35(a). But this case does not involve either one. It is a trial on an entirely separate matter. Just because the United States attorney can look at a piece of paper and get information from it certainly does not mean that he may bring it into court and show it to a jury in any criminal case.[15] We think it may prove highly injurious to the operation of the selective service system if a registrant's confidential information is to be spread far and wide at the wish of local prosecutors. The admission of the questionnaire in this case was error.

The defendant has made other points on this appeal but we do not discuss them because they are too trivial to be worth it. It is obvious from the foregoing that we are compelled to order a new trial. We do so with reluctance. The government had ample evidence to sustain the conviction. The trial judge conducted the case with great patience in spite of the fact that he was subjected to continuous annoyance by the bad court room manners of the counsel for the defendant.

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

15. 5 U.S.C.A. § 139b(a) provides that if information obtained in confidence by a Federal agency is released by it to another agency, all the provisions relating to unlawful disclosure of any such information shall apply to all personnel of the second agency.