**James WRIGHT, Plaintiff,**

v.

**Arlen SPECTER, District Attorney of Philadelphia, Defendant.**

**Civ. A. No. 72–2128.**

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1972.

Louis W. Fryman, Becker, Fryman & Ervais, Philadelphia, Pa., for plaintiff.

David Richman, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, a former Philadelphia police officer, was arrested on April 7, 1972 on charges of bribery, corrupt solicitation, conspiracy, malfeasance, misfeasance, and nonfeasance in office. He has brought this action under the Civil Rights Act, 42 U.S.C. § 1983, seeking a preliminary injunction to restrain the defendant, the District Attorney of Philadelphia, from prosecuting in the Court of Common Pleas of Philadelphia County criminal charges pending against him. Plaintiff also asks for a declaratory judgment declaring unconstitutional a portion of Section 18 of the Act of October 17, 1969, P.L. 259, as amended July 14, 1971, No. 45, Sec. 1, 17 P.S. Sec. 711.18 ("the Municipal Court Act"), and General Court regulation 71–16 issued on October 19, 1971 by the President Judge of the Court of Common Pleas of Philadelphia County.

The Pennsylvania Municipal Court Act provides in relevant part:

"The municipal court shall have jurisdiction in all criminal offenses for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years, including indictable offenses under the motor vehicle law. \* \* \* Until there are a sufficient number of judges who are members of the bar of the Supreme Court serving in the municipal court to handle such matters, the trial division of the court of common pleas shall have concurrent jurisdiction over such matters, the assignment of cases to the respective courts to be determined by rule prescribed by the president judge of the court of common pleas."

As of January 1, 1969, the Supreme Court of Pennsylvania, acting within its constitutional power,[1] promulgated Rule 6001(b):

"*Rule 6001.  Definitions.*

\*    \*    \*    \*    \*    \*

"(b) If more than one offense arising out of the same incident is charged, the case shall be a Municipal Court case only if the maximum sentence which may be imposed for all of the offenses charged, if the sentence were cumulated, does not exceed the limits imposed in § 6001(a)." [not more than five (5) years].

On October 19, 1971, the President Judge of the Court of Common Pleas, Philadelphia County, apparently acting by virtue of the grant of power in the Municipal Court Act, issued General Court Regulation 71–16, which states in relevant part:

"All cases within the concurrent jurisdiction of the Municipal Court of Philadelphia and the Trial Division of the Court of Common Pleas of Philadelphia will be assigned for trial to the Municipal Court, unless the President Judge of the Court of Common Pleas or his designee approves a certification by counsel for defendant that a trial in the Municipal Court will unduly delay defendant's access to a trial by jury or a cer-

---

[1].  Constitution of Pennsylvania, Art. V, § 10(c), as amended January 1, 1969, P.S.

tification by counsel for either defendant or the Commonwealth that the trial of the case will be so time-consuming as to unduly disrupt the business of the Municipal Court. * * * "

Finally, on January 5, 1972, the President Judge of the Municipal Court promulgated his own definition of a Municipal Court case, also under the title Rule 6001(b):

"(b) If more than one offense arising out of the same incident is charged, the case shall be a Municipal Court case only if the maximum sentence which may be imposed for all of the offenses charged, does not exceed the limits imposed in § 6001(a)."

On May 5, 1972, the President Judge of the Common Pleas Court certified plaintiff's case to the Court of Common Pleas, pursuant to General Court Regulation 71–16, *supra*. After unsuccessful challenges to the certification in the state courts, plaintiff filed the present suit on October 20, 1972.

While there is no doubt that the Federal Anti-Injunction Act[2] presents no bar to the issuance of an injunction in a civil rights action such as this, there is equally no doubt that federal action is not compelled. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). In Mitchum, after holding that the Anti-Injunction Act does not apply to civil rights actions, the Court said (407 U.S. at 243, 92 S.Ct. at 2162):

"In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 and its companion cases. They are principles that have been emphasized by this Court many times in the past."

It is perfectly clear "that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Younger v. Harris, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). And in Watson v. Buck, 313 U. S. 387, 61 S.Ct. 692, 85 L.Ed. 1416 (1941), the Court said, at page 400, 61 S.Ct. at page 966:

"Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, *even if such statutes are unconstitutional.*" [Emphasis added.]

In Younger, the Court underlined the sharp restrictions on federal interference with state court proceedings, at page 46, 91 S.Ct. at page 751:

"In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' * * * "

The present case has none of the ingredients necessary to justify action on our part. It is true that plaintiff will have to defend a criminal prosecution in a forum he does not like. However,

"[c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. * * * "

Younger v. Harris, *supra,* at 46, 91 S. Ct. at page 751.

**2.** 28 U.S.C.A. § 2283.

Rather, there are here even stronger reasons for withholding the federal hand than in Younger. There is presently pending before the Supreme court of Pennsylvania a case involving the apparent collision of the two Rules 6001(b), i. e., the Supreme Court Rule and the Municipal Court Rule. Commonwealth of Pennsylvania ex rel. Specter v. Cox et al., Supreme Court of Penna., 235 Misc. Docket 19. Since the state determination of the question there involved may moot the constitutional question raised here, there is all the more reason for federal abstention. Cf., Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

Furthermore, we point out that if Wright is acquitted the question will also become moot. If he is convicted, and his constitutional arguments are rejected in the state courts, he may always raise any constitutional issue that may exist through the ultimate path of federal habeas corpus. In Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), the Court said, at page 244, 46 S.Ct. at page 493:

> "The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection."

There is no reason to believe here that the state courts will not adequately protect plaintiff's constitutional rights.

Plaintiff argues that he is not seeking to enjoin a criminal prosecution; the prosecution should go forward, says the plaintiff, but not in the Common Pleas Court. This argument, we think, is specious. True, plaintiff is not attacking the statute under which the criminal charge was made. He is, however, attacking a procedural statute governing the prosecution of the charge, and, at least inferentially, he is asking us to ignore a procedural rule which not only has the force of a statute, but also operates to suspend all other laws "to the extent that they are inconsistent with" [3] the Supreme Court Rules. Thus, he is asking us to intervene in Pennsylvania's administration of its own criminal laws. The policy which commands that we refuse to enjoin a state criminal proceeding equally mandates that we refrain from deciding in what state forum a defendant may be tried.

In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the Court said, at page 120, 72 S.Ct. at page 120:

> " * * * Here the considerations governing that discretion touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States."

There is no qualitative difference between telling the state not to prosecute defendant at all and telling the state where it must try him. The resulting abrasiveness is equal and is equally to be avoided.

We hold that the issuance of an injunction in this case would be improper. And the "same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971).

---

3. Constitution of Penna., Art. V, § 10(c).