541 F.2d 373
 1 Fed. R. Evid. Serv. 309
 In the Matter of GRAND JURY IMPANELED JANUARY 21, 1975 (two cases).
Appeal of Abraham E. FREEDMAN, in No. 76-1248.
Appeal of Americo V. CORTESE, in No. 76-1276.
 Nos. 76-1248, 76-1276.
 United States Court of Appeals,
Third Circuit.
 Argued May 24, 1976.
Decided Aug. 10, 1976.
 
 Jonathan L. Goldstein, U. S. Atty., John J. Barry, Asst. U. S. Atty., Newark, N. J., for appellee.
 Howard Gittis, Alan J. Davis, Mark A. Aronchick, Philadelphia, Pa., Richard A. Levin, Amster & Levin, Millburn, N. J., Wolf, Block, Schorr & Solis-Cohen, for Abraham E. Freedman.
 Jonathan Vipond, III, Michael L. Seabolt, Philadelphia, Pa., for Americo V. Cortese.
 Before SEITZ, Chief Judge, ADAMS and HUNTER, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 The primary issue presented by these appeals is whether retainer agreements filed by a law firm with the Prothonotary of the Court of Common Pleas of Philadelphia County pursuant to Rule 202 of that court are privileged so as to defeat a subpoena for such agreements issued by a federal grand jury. The district court held that the agreements were not privileged and enforced the subpoena. We agree and accordingly affirm.
 
 I.
 
 2
 On December 10, 1975, a subpoena duces tecum was served on the Honorable Americo V. Cortese, Prothonotary of the Court of Common Pleas of Philadelphia County, directing him to produce "any and all retainer agreements filed by the law firm of Freedman, Borowsky and Lorry for the period January 1, 1968 to the present." App. at 2a. The subpoena was issued by a federal grand jury sitting in Newark, New Jersey in connection with its investigation of possible criminal violations by the National Maritime Union, its officers and employees. At the time the subpoena was served, attorneys in Philadelphia County were required by Rule 202 of the Court of Common Pleas of that county ("Local Rule 202") to file a copy of all contingent fee agreements with the Prothonotary.[1] Section (f) of Rule 202 provided that the filed agreements "shall be impounded subject to inspection only by Order of the Court, by the client or by the Disciplinary Board of the Supreme Court of Pennsylvania."
 
 
 3
 On January 19, 1976, the Prothonotary filed a motion to quash the subpoena in the district court. Also, Abraham E. Freedman, for the law firm of Freedman, Borowsky & Lorry, moved to intervene and to quash the subpoena. The Prothonotary argued that he was not the proper person on whom to serve the subpoena. Both Freedman and the Prothonotary contended that the retainer agreements were privileged by virtue of section (f) of Local Rule 202 and that the district court, as a matter of comity, should defer enforcement of the subpoena pending the filing and disposition of an appropriate petition to the Court of Common Pleas for release of the agreements in question.
 
 
 4
 A hearing was held on the motions on January 20, 1976. No testimony was taken, but certain exhibits and affidavits were introduced by the parties.[2] Just prior to the hearing, a representative of the Prothonotary's office had appeared before the grand jury and had refused to produce the subpoenaed records on the grounds asserted in the motion to quash.
 
 
 5
 On January 23, 1976, the district court, by oral opinion, ruled that Freedman had standing to intervene but rejected Freedman's and the Prothonotary's objections to the subpoena. A formal written order was entered on February 4, 1976, granting Freedman's motion to intervene, denying the motions to quash by the Prothonotary and Freedman, directing the Prothonotary to produce the records forthwith and staying enforcement pending appeal. App. at 89a-90a.
 
 
 6
 Freedman filed a notice of appeal in the district court on January 23, 1976. Id. at 91a. On February 9, 1976, the Prothonotary moved for certification of the February 4, order under 28 U.S.C. § 1292(b), which motion was granted by the district court. Id. at 92a-96a. We granted the Prothonotary's petition for appeal pursuant to Federal Rule of Appellate Procedure 5 on March 1, 1976, and stayed further proceedings in the district court pending disposition of the appeal. Id. at 109a.
 
 II.
 
 7
 At the outset, we are met with government objections to Freedman's appeal and standing to intervene below. Freedman's notice of appeal was filed on January 23, 1976, twelve days prior to entry of the court's written order on February 4, 1976. Although the appeal was technically premature,[3] we will not dismiss. The court's order is appealable,[4] and the government has not been prejudiced by the prematurity. Hodge v. Hodge, 507 F.2d 87, 89 (3d Cir. 1975); Hamilton v. Stillwell Van & Storage Co., 343 F.2d 453, 455 (3d Cir. 1965); see Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). We are also of the opinion that Freedman had standing to intervene below and challenge the subpoena on the basis of his claim of privilege. Perlman v. United States, 247 U.S. 7, 12, 38 S.Ct. 417, 62 L.Ed. 950 (1918); see United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); Schwimmer v. United States, 232 F.2d 855, 860 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).
 
 
 8
 The Prothonotary contends initially that the subpoena was not appropriately directed to him because his function is ministerial and he lacks legal authority to produce the records sought, absent an order of the Court of Common Pleas. In our view, the subpoena was properly directed to the Prothonotary. He is the custodian of the retainer agreements and had actual possession of them at the time the subpoena was issued. See Schwimmer v. United States, supra, 232 F.2d at 860; In re New York State Sales Tax Records, 382 F.Supp. 1205, 1206 (W.D.N.Y.1974); cf. Fisher v. United States, --- U.S. ----, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), aff'g 500 F.2d 683 (3d Cir. 1974) (en banc); Couch v. United States, supra, 409 U.S. at 330-35, 93 S.Ct. 611. The grand jury's subpoena supplies the legal authority for the Prothonotary's production of the records.
 
 
 9
 Both the Prothonotary and Freedman urged the district court, as a matter of comity, to defer enforcement of the subpoena pending an appropriate application to the Court of Common Pleas for release of the retainer agreements. While recognizing that the state's interest was "not without substance," the district court nevertheless held that deference would be inappropriate in this case. "To hold otherwise," the court stated, "would do violence to the integrity of the grand jury as an arm of the federal judiciary." App. at 84a. Appellants contend that in refusing to stay its hand, the district court "failed to accommodate and needlessly disrupted a state regulatory system of paramount public importance."
 
 
 10
 As did the district court, we recognize that the state interests involved in this case are not insubstantial. And perhaps as a matter of comity, if not prudence and orderly procedure, the United States might well have first sought an order of the Court of Common Pleas: the instant litigation, and resultant expenditure of time and energy by the parties and the judiciary, might then have proved unnecessary.[5] But the district court did not err in declining to defer enforcement in this case. The ultimate question of privilege presented in this action is, of course, one of federal, not state law, pp. 8-10 infra, and accordingly is appropriate for decision by a federal court. The district court had before it and considered the views of President Judge Bradley of the Court of Common Pleas and thus was not uninformed as to the state's interests in and interpretation of Local Rule 202. App. at 22a-24a. The court could well have concluded that interference with and delay of the grand jury's investigative functions outweighed any interests in comity. See Bellotti v. Baird, --- U.S. ----, ----, 96 S.Ct. 2857, 48 L.Ed.2d --- (1976); Lake Carriers Ass'n v. MacMullen, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); England v. Medical Examiners, 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The grand jury possesses broad investigative powers.[6] Here, its term and the statute of limitations may be running daily and there was no basis for the district court to assume that the Court of Common Pleas would release the subpoenaed records.[7] Finally, unlike many of the cases cited by appellants,[8] the significant interests in comity that are raised when a federal court's action interferes with a pending state court proceeding are not present here.
 
 III.
 A.
 
 11
 We come now to the primary issue presented by this appeal. The Prothonotary and Freedman argue that the contingent fee agreements under subpoena are privileged and thus cannot be obtained by grand jury subpoena. They assert that under "well-established principles of federal common law, which have been adopted in rule 501 of the Federal Rules of Evidence," a person filing records under a state "required records" law has a privilege against use of those records in any phase of a federal criminal proceeding. Local Rule 202 is such a required records rule, in their view. The government's rejoinder is two-pronged. First, it claims that even if Local Rule 202 creates a required reports privilege as a matter of state law, a federal court need not and should not recognize that privilege as a matter of federal common law in a federal grand jury investigation or criminal proceeding. Alternatively, it contends that Local Rule 202 does not, even as a matter of state law, cloak the subpoenaed retainer agreements with a privilege against their use in a grand jury investigation or criminal proceeding; it is merely a "limited access rule."
 
 
 12
 Preliminarily, we decline the government's invitation to divine how the Pennsylvania courts would interpret Local Rule 202. That determination is better left to the state courts as the scope of the privilege, if any, created by Local Rule 202 is unnecessary to our decision.[9] Thus, we assume for purposes of this appeal only that as a matter of Pennsylvania law, retainer agreements filed under Local Rule 202 are privileged from use in any phase of a criminal proceeding.[10]
 
 
 13
 As the Supreme Court has stated a federal grand jury " 'has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); see United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). In 1975, Congress enacted the Federal Rules of Evidence, rule 501 of which governs evidentiary privileges in the federal courts. It provides as follows:
 
 
 14
 Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
 
 
 15
 The legislative history of rule 501 indicates clearly that the rule was intended, in federal question and criminal cases, to leave the federal law of privileges in its current posture, to be developed by the judiciary by resort to the "principles of the common law as . . . interpreted . . . in the light of reason and experience."[11] Thus, we must decide whether as a matter of federal common law, as interpreted in light of reason and experience, a privilege exists against the use in federal grand jury proceedings of retainer agreements filed under Local Rule 202.[12]B.
 
 
 16
 A brief review of the required reports privilege and of current federal court experience with that privilege is necessary to our decision.
 
 
 17
 Several thousand statutes and regulations in the United States provide for non-disclosure of certain records and reports which citizens are compelled by law to submit to federal, state or local governments. See generally 8 J. Wigmore, Evidence § 2377, at 780 (McNaughton rev. 1961); Comment, The Required Report Privileges, 56 Nw.V.L.Rev. 283 (1961). These required report privilege statutes vary greatly in form and substance; they are generally tailored to a particular regulatory area and extend to such diverse areas as income tax returns, census reports, selective service records, public health records and accident reports, among others.[13] Id. at 285 (statutes cited therein); 2 Weinstein's Evidence, supra note 10, P 502(02), at 502-5; 8 J. Wigmore, supra § 2377, at 781-91 (statutes cited therein). The purpose generally underlying the grant of such a privilege is to encourage persons to report voluntarily certain potentially self-damaging information that is needed for effective governmental functioning.[14] As Judge Weinstein has stated, "By self-reporting, the government is able to obtain full and accurate information directly from the persons possessing the information, in order to better conduct its different functions, and also is saved the expenditure of time and money in not having to require investigation by its own agencies." 2 Weinstein's Evidence, supra P 502(02), at 502-4 n. 1; see Comment, Federal Rules of Evidence and the Law of Privileges, 15 Wayne L.Rev. 1287, 1303 (1969); 8 J. Wigmore, supra § 2377, at 781.
 
 
 18
 The required reports privilege is in general a statutory creation. We have not been directed to or in our research found any decision of this court that has recognized a state statutory required reports privilege as a matter of federal common law.[15] Nor have we been cited to or found a decision of any federal court which has explicitly adopted such a state statute in a federal criminal proceeding as a matter of federal common law. Both In re Reid, 155 F. 933 (E.D.Mich.1906) and In re Valecia Condensed Milk Co., 240 F. 310 (7th Cir. 1917), cited by appellants, did recognize state statutory required reports privileges in bankruptcy proceedings. But both cases were decided at a time when federal courts considered themselves bound to follow state evidentiary rules, even in federal question cases.[16] That proposition was clearly laid to rest with regard to federal criminal proceedings in 1933 and 1934 in Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933) and Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 87, 78 L.Ed. 539 (1934). Both the Prothonotary and Freedman rely heavily on Herman Brothers Pet Supply, Inc. v. NLRB, 360 F.2d 176 (6th Cir. 1966) in support of the application of a state required reports privilege as a matter of federal common law. In that case, Herman Pet Supply obtained a subpoena duces tecum from the NLRB and through it sought to obtain from the Michigan Employment Security Commission certain records of unemployment compensation claims made by employees involved in the case. An NLRB Trial Examiner, on motion of the Commission, quashed the subpoena on the ground that under Michigan law the records were confidential. The Herman court did not discuss, and apparently assumed, the propriety of recognizing a state statutory required reports privilege. The question decided by that court was whether the Michigan statute, as a matter of state law, was intended to prohibit use of the records in a trial, and was not whether such a statute should be recognized as a matter of federal common law in a federal question case. Whatever can be said of that decision, it is scant authority indeed for the proposition that a federal court must always recognize a state statutory required reports privilege as a matter of federal common law in a federal criminal proceeding or grand jury investigation.[17]
 
 
 19
 We are aware that the Advisory Committee on Rules of Evidence proposed and the Supreme Court promulgated a rule similar to that advocated by appellants.[18] However, Congress did not enact the proposed rule 502. See note 11 supra. In light of the legislative history of the privilege article of the federal rules, id., we interpret the refusal to adopt rule 502 as indicating neither Congressional approval nor disapproval of a federal common law required reports privilege. We do note, however, that the Advisory Committee Note to proposed rule 502, relies primarily on In re Reid, supra, In re Valecia Condensed Milk Co., supra, and Herman Brothers Pet Supply, Inc., supra, as support for recognition of such a privilege. See pp. 380-381 supra. Also, at least one commentator has stated that adoption of proposed rule 502 "may substantially alter practice predating the adoption of the federal rules."[19]
 
 C.
 
 20
 Thus, the precise question presented appears to be one of first impression. It is not, as appellants argue, a well-established principle of federal common law that records required to be filed by state law under assurances of confidentiality are privileged against use in federal grand jury proceedings. We may nevertheless adopt such a rule in light of reason and experience. See United States v. Allery, 526 F.2d 1362, 1366 (8th Cir. 1975).
 
 
 21
 Unlike many rules of evidence, evidentiary privileges are designed to exclude relevant information from the fact-finder. The granting or withholding of an evidentiary privilege requires a balancing of competing policies. United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Carr v. Monroe Manufacturing Co., 431 F.2d 384, 388 (5th Cir. 1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971); 8 J. Wigmore, supra, § 2285, at 527-28. On the one hand, there is the state's interest in fostering certain relationships, such as husband-wife, attorney-client, or in encouraging the voluntary filing of certain records, as here. On the other hand, the two-fold aim of criminal justice "that guilt shall not escape or innocence suffer"[20] demands that every relevant fact be developed and presented to the fact-finder. This interest is particularly compelling in the context of a grand jury, for "its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments" and therefore "its investigative powers are necessarily broad." Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Moreover, because privileges are in derogation of the search for truth, "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed." United States v. Nixon, supra 418 U.S. at 710.[21] Privileges apply only to the extent necessary to achieve their purpose. Fisher v. United States, --- U.S. ----, ----, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).
 
 
 22
 We hold that any presumed privilege created by Local Rule 202 must yield here to the public's interest in law enforcement and in ensuring effective grand jury proceedings. The avowed purpose of cloaking the retainer agreements with a privilege is to ensure voluntary compliance with the filing requirements. As stated by President Judge Bradley in his affidavit:
 
 
 23
 It is the provision for confidentiality that was guaranteed subject only to the above limitation which assured the likelihood of a broader and more frequent compliance with this Rule by the attorneys in question.
 
 
 24
 If the Rule and the provided-for confidentiality is in any way broadened or breached, it is my opinion that it could very well frustrate the operation and effectiveness of Rule 202(f) since it is quite likely and expectable that many attorneys would not comply with the Rule if the data required was not protected and its release restricted as set forth in the Rule.
 
 
 25
 App. at 23a. In our view the state's interest in voluntary compliance will not be seriously impaired by enforcing the instant grand jury subpoena. We note initially that a federal grand jury's demand for such documents must meet the standards of jurisdiction, relevancy and lack of an improper purpose adopted by this court in Schofield I[22] and II.[23] There are also, in our view, other effective means for ensuring compliance with the filing requirements that would not require the kind of extensive enforcement efforts necessary in the case of motor vehicle accident or public health reports. Disciplinary proceedings and judicial refusal to enforce unfiled agreements are but two at the disposal of the Court of Common Pleas. The Philadelphia bar is a relatively small and well defined group unlike the situation presented where accident or health reports must be filed. Finally, this is not a case where the subpoenaed records would not be available but for the statute requiring their filing.[24] Under Rule 202 of the Pennsylvania Supreme Court, the client, and the law firm[25] or attorney must have copies of the agreement. On balance, we think that any incidental and speculative effect enforcement of the subpoena would have on voluntary compliance with the filing requirements of Local Rule 202 is outweighed by the grand jury's need for this evidence in order effectively to conduct its investigation. See Patterson v. Norfolk & W. Ry., 489 F.2d 303, 307 (5th Cir. 1973).
 
 
 26
 Our decision today is not intended to interfere with the Court of Common Pleas' commendable regulatory system or to denigrate that court's reasons for seeking to afford the retainer agreements confidentiality. But where important federal interests are concerned we will not accept blindly and without examination the state's policy of confidentiality. See United States v. Allery, 526 F.2d 1362, 1366 (8th Cir. 1975). We also have not decided that a federal court will never recognize a state required reports privilege as a matter of federal common law in a federal grand jury investigation. Perhaps there may be instances that will present compelling justifications for denying a federal grand jury relevant information; such justifications were not presented here.
 
 IV.
 
 27
 For the reasons stated above, the judgment of the district court shall be affirmed.
 
 
 
 [1]
 Local Rule 202 provides, in pertinent part:
 (d) Every attorney effecting the recovery of damages for personal injuries, whether by settlement or through litigation, shall forthwith fill out, in duplicate, a statement showing in reasonable detail the disposition of the amount received. One such copy shall be delivered to the client, and the other shall be preserved by the attorney for two years following such settlement, subject to inspection by the client, by the court, and by the Disciplinary Board of the Supreme Court of Pennsylvania, its staff and employees. Such statements accumulated by an attorney ceasing to practice may be turned over to the then chairman of such Board.
 (e) Agreements between attorney and client relating to compensation wholly or partly on a contingent basis shall contain a statement of the name, address and relationship of the person who recommended the client.
 (f) Every attorney who enters into an agreement with a client with reference to legal representation for damages for death or personal injuries sustained either at common law or under the provisions of the Workmen's Compensation Act, or for damages in land condemnation proceedings, under the terms of which agreement the attorney's compensation is wholly or partly on a contingent basis, shall file with the Prothonotary:
 (1) Within 20 days of the date of its execution, an executed copy of the agreement; and
 (2) Within 20 days of the final disposition of the case, a statement showing in reasonable detail the disposition of the amount received.
 The Prothonotary shall assign to each agreement a number and shall make a record thereof in a separate docket. The Prothonotary shall record in the same docket the closing statement above referred to. The copy of the agreement, the copy of the closing statement and the docket shall be impounded subject to inspection only by Order of the Court, by the client or by the Disciplinary Board of the Supreme Court of Pennsylvania.
 App. at 10a. The rule was adopted pursuant to the power vested in the state judiciary under article V, § 10(c) of the Pennsylvania Constitution to prescribe general rules governing the practice of law in Pennsylvania. The Supreme Court of Pennsylvania Rule 202 provides:
 Agreements between attorney and client relating to compensation wholly or partly on a contingent basis shall be in writing, executed in duplicate. One executed copy shall be delivered to the client at the time of the making of the agreement, and the other shall be preserved by the attorney for at least two years after final judgment or settlement of the case. Such agreement shall be subject to inspection by the Court, by the appropriate committee of the Bar Association of the County or of the Court, and by the Board of Governance of the Supreme Court.
 App. at 9a.
 On May 20, 1976, while these appeals were pending, the Board of Judges of the Court of Common Pleas of Philadelphia County repealed sections (e) and (f) of Local Rule 202. By letter, counsel for all parties contended that the repeal has no effect on these appeals. We agree. We do not interpret the Board of Judges' action to constitute a retroactive repeal of any alleged privilege that may have attached to agreements filed prior to May 20, 1976. See 1 Pa.C.S.A. § 1926 (1975-1976 Supp.); Schladensky v. Ellis, 442 Pa. 471, 275 A.2d 663 (1971). The rights and obligations of the parties became fixed when the subpoena was served and, in our view, were unaffected by the repeal. Cf. Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).
 
 
 [2]
 The court accepted for filing and consideration an affidavit of the Honorable Edward J. Bradley, President Judge of the Court of Common Pleas of Philadelphia County, in which President Judge Bradley stated his views on the need for confidentiality of retainer agreements filed under Local Rule 202. App. at 22a-24a. The affidavit had been submitted by the Philadelphia Bar Association with its motions to intervene and file an amicus curiae brief in support of the Prothonotary's motion to quash. The district court denied intervention to the Association and refused to accept its amicus brief
 
 
 [3]
 See Fed.R.App.P. 4(a)
 
 
 [4]
 We have jurisdiction to entertain Freedman's appeal under 28 U.S.C. § 1291. See United States v. Nixon, 418 U.S. 683, 691, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Perlman v. United States, 247 U.S. 7, 12-13, 38 S.Ct. 417, 62 L.Ed. 950 (1918)
 
 
 [5]
 Cf. United States v. Monjar, 154 F.2d 954, 958 (3d Cir. 1946)
 
 
 [6]
 United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919); In re Grand Jury Proceedings, 525 F.2d 151, 156-57 (3d Cir. 1975)
 
 
 [7]
 To the contrary, many of President Judge Bradley's remarks could be interpreted as indicating a possible reluctance, on his part, to permit release of the agreements. See App. at 23a
 
 
 [8]
 See, e. g., Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Erdmann v. Stevens, 458 F.2d 1205 (2d Cir. 1972); Wright v. Specter, 352 F.Supp. 317 (E.D.Pa.1972). We also do not consider Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), controlling here. In Prentis the court deferred decision of a constitutional question pending resort to state tribunals. The instant case does not present a question of constitutional dimension and thus the federal policy in favor of deferring decision of constitutional questions when possible is not present
 
 
 [9]
 See Carr v. Monroe Mfg. Co., 431 F.2d 384, 388 (5th Cir. 1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971)
 
 
 [10]
 We note, however, that Local Rule 202 does not by its terms exempt filed retainer agreements from use in court proceedings or criminal investigations. Also, because recognition of the required reports privilege may impede the judicial search for truth, Pennsylvania courts, as well as other state and federal courts, have historically confined the cloak of secrecy to the narrowest scope consistent with the language and subject matter of the required reports statute. 8 J. Wigmore, Evidence § 2377, at 781 (McNaughton rev. 1961) (cases cited therein); 2 J. Weinstein & M. Berger, Evidence P 502(03), at 502-7 (1975) (hereinafter cited as "Weinstein's Evidence") (cases cited therein); Comment, The Required Report Privileges, 56 Nw.U.L.Rev. 283, 287 (1961) (cases cited therein); see, e. g., St. Regis Paper Co. v. United States, 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Stephenson v. Millers Mutual Fire Ins. Co., 236 F.Supp. 420, 423 (D.Ariz.1964); Panik v. Didra, 370 Pa. 488, 493-94, 88 A.2d 730, 733 (1952). Thus were it necessary for our decision to determine the scope of the privilege, if any, created by Local Rule 202, we would avoid a construction of that rule that would suppress otherwise competent evidence unless we concluded that the rule, strictly construed, required such a result. St. Regis Paper Co. v. United States, supra 368 U.S. at 218, 82 S.Ct. 289
 
 
 [11]
 See S.Rep.No.93-1277, 93d Cong., 2d Sess. 43 (1974), 4 U.S.Code Cong. & Admin.News pp. 7051, 7053-54, 7058 (1974); H.R.Rep.No.93-650, 93d Cong., 2d Sess. 72 (1974), 4 U.S.Code Cong. & Admin.News 7075, 7082-83 (1974). See generally 2 Weinstein's Evidence, supra note 10, P 5.01(1) et seq., at 501-2; Krattenmaker, Interpersonal Testimonial Privileges Under the Federal Rules of Evidence: A Suggested Approach, 64 Geo.L.J. 613, 645 (1976). This Congressional intention was stated most aptly by Congressman Hungate, the principal draftsman of the Rules:
 The House rule on privilege is intended to leave the Federal law of privilege where we found it. The Federal courts are to develop the law of privilege on a case-by-case basis.
 Rule 501 is not intended to freeze the law of privilege as it now exists. The phrase "governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience," is intended to provide the courts with the flexibility to develop rules of privileges on a case-by-case basis. For example, the Supreme Court's rule of evidence contained no rule of privilege for a newspaperperson. The language of Rule 501 permits the courts to develop a privilege for newspaperpeople on a case-by-case basis. The language cannot be interpreted as a congressional expression in favor of having no such privilege, nor can the conference action be interpreted as denying to newspaperpeople any protection they may have from State newsperson's privilege laws.
 
 
 [120]
 Cong.Rec.H 12253-54 (daily ed. Dec. 18, 1974) (explaining the final Conference Report version of the Rules )
 The history of the privilege article of the Federal Rules of Evidence was a stormy one. See generally 2 Weinstein's Evidence, supra PP 501(01)-(05), at 501-1 to -49. The privilege article, as originally proposed by the Advisory Committee on Rules of Evidence and promulgated by the Supreme Court, provided that only nine enumerated non-constitutional privileges and those required by the Constitution or Act of Congress were to be recognized by federal courts. See Proposed Federal Rules of Evidence, 501-10, 56 F.R.D. 230-56. The public response to these proposed privilege rules was intense. In order to defuse this criticism, which threatened to forestall or prevent passage of the Rules, Congress adopted rule 501, which was modelled after former rule 26 of the Federal Rules of Criminal Procedure. S.Rep.No.93-1277, supra at 43; see United States v. Craig, 528 F.2d 773, 776 (7th Cir. 1976).
 
 
 [12]
 For a suggested approach to the resolution of claims of privilege under rule 501, see Krattenmaker, supra note 11, at 661-68. See also United States v. Craig, 528 F.2d 773 (7th Cir. 1976); United States v. Allery, 526 F.2d 1362 (8th Cir. 1975); Lewis v. United States, 517 F.2d 236 (9th Cir. 1975); Carr v. Monroe Mfg. Co., 431 F.2d 384 (5th Cir. 1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971)
 
 
 [13]
 See generally Annot., "Constitutionality, construction and effect of statute or regulation relating specifically to divulgence of information acquired by public officers." 165 A.L.R. 1302 (1946). See note 10 supra
 
 
 [14]
 In addition to "encouragement," it has been suggested that the privilege also serves a "housekeeping" function, that is, "(a) to prevent disclosure of government officer's and investigator's opinions appearing in such documents; (b) to preserve documents from loss, destruction, alteration or wear; (c) to avoid the general inconvenience resulting from frequent demands for disclosure of documents; or (d) to prevent direct exertion of judicial power on executive personnel." Comment, supra note 10, at 286. Neither the Prothonotary nor Freedman assert that Local Rule 202 embodies this so-called "housekeeping" policy
 
 
 [15]
 In United States v. Caserta, 199 F.2d 905 (3d Cir. 1952), this court held that it was error for the district court to permit the government to read a portion of a taxpayer's selective service questionnaire in a prosecution for income tax evasion. The questionnaire contained at the bottom a statement to the effect that the information was "confidential," except for certain specified uses by the government. The court stated, "(I)t may prove highly injurious to the operation of the selective service system if a registrant's confidential information is to be spread far and wide at the wish of local prosecutors." Id. at 911. We do not read Caserta as adopting a federal common law required reports privilege; rather, it simply recognized a privilege expressly created by federal regulation. See 50 U.S.C.App. § 327. Moreover, Caserta was not, as here, concerned with recognition of a state-created privilege in a federal criminal proceeding
 
 
 [16]
 Krattenmaker, supra note 11, at 619; cf. Leach, State Law of Evidence in Federal Courts, 43 Harv.L.Rev. 554 (1930). The court in In re Reid did discuss the policy underlying the state required reports privilege but concluded its opinion by describing the state law as "a rule of evidence which the Courts of the United States will enforce." As authority for that proposition, the court cited Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 255, 5 S.Ct. 119, 28 L.Ed. 708 (1884), wherein the Supreme Court held that state rules of evidence controlled in federal civil cases. In re Valecia relied primarily on In re Reid and concluded, "we find nothing in the bankruptcy act or in its administration requiring the rules of evidence applicable to proceedings thereunder to be different from such as generally prevail (i. e., state rules)." 240 F. at 315
 
 
 [17]
 Krizak v. W. C. Brooks & Sons, Inc., 320 F.2d 37 (4th Cir. 1963), cited by the Advisory Committee on Rules of Evidence in the note accompanying proposed rule 502, see infra, concerned the application of a state required reports privilege in a diversity case and is therefore inapposite. Moreover, the Krizak court did permit disclosure of the statements made in the report, albeit not the report itself. See also Stephenson v. Millers Mutual Fire Ins. Co., 236 F.Supp. 420 (D.Ariz.1964)
 
 
 [18]
 Proposed rule 502 read as follows:
 Rule 502. Required Reports Privileged by State
 A person, corporation, association, or other organization or entity, either public or private, making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if the law requiring it to be made so provides. A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if the law requiring it to be made so provides. No privilege exists under this rule in actions involving perjury, false statements, fraud in the return or report, or other failure to comply with the law in question.
 
 
 [56]
 F.R.D. 234-35. For a discussion of this proposed rule see generally 2 Weinstein's Evidence, supra note 10, at P 502(1) et seq.; Comment, The Federal Rules of Evidence and the Law of Privileges, 15 Wayne L.Rev. 1287, 1302-04 (1969)
 
 
 [19]
 2 Weinstein's Evidence, supra note 10, P 502(04), at 502-9; see Advisory Comm. Note, Proposed Rule 502, 56 F.R.D. 235 ("the present rule reiterates a result commonly specified in federal statutes and extends its application to state statutes of similar character" (emphasis added))
 
 
 [20]
 Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)
 
 
 [21]
 The Court in Nixon quoted Justice Frankfurter's dissent in Elkins v. United States, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960): "Limitations are properly placed upon the operation of this general principle only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."
 
 
 [22]
 In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973)
 
 
 [23]
 In re Grand Jury Proceedings, 507 F.2d 963 (3d Cir.), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975)
 
 
 [24]
 At least one distinguished commentator has argued that a state's assurances of confidentiality should be recognized by a federal court as a matter of federal common law because absent the state filing requirement, the subpoenaed reports would not exist; e. g., accident or public health reports. See 2 Weinstein's Evidence, supra note 10, P 502(04), at 502-10; Weinstein, The Uniformity-Conformity Dilemma Facing Draftsmen of Federal Rules of Evidence, 69 Colum.L.Rev. 353, 371 n. 80 (1969). See generally Ladd, Privileges, 1969 Law & Soc. Order 555; Note, Federal Rules of Evidence and the Law of Privileges, 15 Wayne L.Rev. 1287 (1969)
 
 
 [25]
 In In re Grand Jury Impaneled January 21, 1975, 529 F.2d 543 (3d Cir. 1976), this court held that certain financial records of the law firm of Freedman, Borowsky & Lorry were subject to grand jury subpoena so long as the requirements of Schofield I and II were satisfied