## UNITED STATES v. CASERTA.

No. 16493.

United States District Court
E. D. Pennsylvania.
May 14, 1952.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

CLARY, District Judge.

Defendant, Michael Caserta, was charged in Indictment No. 16493 with attempting to defeat and evade the Internal Revenue Laws of the United States by filing false and fraudulent income tax returns for the years 1946, 1947, 1948 and 1949, in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b).

His brother, Joseph Caserta, was indicted in connection with certain operations in 1949 of part of defendant's business, under Indictment No. 16492, but by direction of the Court a judgment of acquittal was entered as to him.

After a week's trial, the case of Michael Caserta was submitted to the jury and he was acquitted on Counts I and II covering the years 1946 and 1947 and convicted on Counts III and IV covering the years 1948 and 1949. His counsel filed a motion for judgment of acquittal on both counts or, in the alternative, motion for a new trial citing 21 trial errors. No exception was taken to the charge of the Court. In his brief and at the oral argument on the motion, 15 of the assignments were abandoned and 6 assignments pressed. These will be discussed in the course of this opinion.

The Government in its case undertook to show that Michael Caserta, although reporting income of only $2,090 for 1948 and $4,990 for 1949, had available to him unexplained cash during the two years in question substantially in excess of the income reported. The theory of the Government's case was that defendant was in the lottery or numbers business (a fact admitted at the outset by defendant) and that this unexplained cash gave rise to the inference that he had income in excess of that reported in his tax returns. The case was tried on a so-called "expenditure method" and was not based on a bank deposit theory, nor did the Government take into account the living expenses of the defendant or the two dependents, his wife and mother-in-law, shown on his tax returns. No books or records were kept by the defendant and the Government had the usual difficulty of establishing with any degree of accuracy the actual proceeds of the defendant's business. The Government demonstrated that prior to 1945, Michael Caserta had never filed a tax return and by Selective Service records showed that in 1940 he was earning only $20 a week and in 1943 $40 a week and that no other occupants of his household were gainfully employed.

The first assignment of error in connection with his motion for a new trial involves certain actions of the Assistant United States Attorney which he claims substantially prejudiced and deprived the defendant of a fair trial. Three separate occurrences are involved. The first relates to a remark made by the Assistant United States Attorney to counsel for the defendant. It was made in the course of defendant's counsel's cross-examination of a Treasury Agent who was being pressed for an answer as to whether certain cash with-

drawals might not have been used by the defendant in payment of certain other items purchased by him during the course of the year then under discussion. At that time the Court noticed the Assistant United States Attorney turn toward counsel for the defendant and say something to him. The remark which appears in the record as "What he might have done is a matter for Mr. Caserta to tell the jury" was not heard by the Court. It is extremely doubtful that it was heard by the jury. However, counsel for the defendant immediately moved for a mistrial so loudly that the Court had to caution him to lower his voice. In his motion he repeated practically verbatim the statement alleged to have been made by the District Attorney and thereby made certain that the jury would hear it. This deliberate action on the part of defense counsel precluded an orderly examination of the situation by the Court to determine whether the jury in the first instance had heard the remark. Under the circumstances the Court could not permit a mistrial, instructed the jury to disregard the remark, and corrected whatever misapprehension which the jury might have had concerning the right of the defendant to refrain from taking the stand in the charge to which no exception was taken.

 The second occurrence involved was the action of the Assistant United States Attorney in asking the Court to take action when a Government witness, Erva Wright, apparently repudiated a sworn statement previously given to Government Agents. It was clearly evident to the Court and to everyone in the courtroom that the witness was not telling the truth in her testimony about her knowledge of the defendant and his activities. The Court felt under the circumstances then present that prompt action was indicated, had the jury retire, and heard testimony in the absence of the jury from two Treasury Agents concerning the previous statements of the witness. The hearing lasted only a few minutes and the Court felt that the circumstances warranted a further hearing, which has not been held up until this time. The witness was remanded to the custody of the United States Marshal and

very shortly thereafter asked permission, through a Deputy Marshal, to again take the stand and tell the truth. The Court felt that the witness needed legal advice and requested one of the Public Defenders of Philadelphia County to consult with her and advise her of her legal rights. After such consultation and through her attorney, she again asked permission to resume the stand and tell the truth, which permission was accorded her. Because of the unreliability of her testimony, the Court withdrew from the jury any consideration of that testimony and, under specific instructions from the Court, it was not considered by the jury in arriving at its verdict.

The Court is not without power to regulate the conduct of a trial nor is it required to sit idly by when all the facts and circumstances clearly indicate that a witness is lying. United States v. Francis, D.C., 144 F. 520. The transcript of the testimony in this case reveals that the witness was less than completely truthful on her first appearance on the witness stand. The jury was absent from the courtroom during the short hearing above referred to and the members of the jury, upon return, were clearly and definitely instructed that anything that happened in the courtroom not in their presence was not to be even a matter of speculation by them and was to have no bearing on their decision in the case. The defendant was not harmed, rather was he helped in the action of the Court respecting Erva Wright.

 The third and final situation complained of was the closing remarks of the Assistant United States Attorney to the jury. Defendant's counsel in his closing speech had made a highly dramatic and tearful plea to the jury minimizing the importance of the case and criticizing the Government in its action in prosecuting the defendant for apparently a very small tax evasion. The statement of the District Attorney that defendant had paid only the sum of $337 in taxes is fully borne out in the record and was a proper statement to recall to the jury in view of the extravagant remarks of defense counsel. The reply of the District Attorney was fully warranted

in view of the statements made by defense counsel in his closing speech.

■ The second trial error alleged is that the Court erred in allowing defendant's violation of the Pennsylvania Liquor Control Act, 47 P.S. § 744-1 et seq., for which he was indicted and convicted to be admitted into evidence. The evidence was admitted because it was pertinent and relevant to the tax liability of the particular year involved. Because of that conviction, defendant had to pay a fine and certain counsel fees which showed that he had that amount of money available in the particular year. It was not an inquiry into a collateral offense unconnected with the offense charged in the indictment such as required a reversal in the case of Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077. Rather it was evidence of offenses connected with the offense for which the defendant was on trial, the admission of which evidence is not reversible error. Capone v. United States, 51 F.2d 609, 76 A.L. R. 1534, certiorari denied 284 U.S. 669, 52 S.Ct. 44, 76 L.Ed. 566.

American Jurisprudence, Vol. 20, Sec. 311, at page 290, in commenting on this principle of law states as follows:

"In making proof, it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged, even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes."

■ The third assignment also requires little comment. J. Kaiser, a Government witness, testified as to what defendant's tax would have been for the years 1948 and 1949, provided that the jurors believed that the figures obtained by him in his thorough examination of defendant's activities were accurate. Defendant's contention that the Agent could not testify as to his calculations based on the examination of the limited books and records of the defendant and the revelation of cash expenditures made by the defendant in the years in question is answered by the opinion of Judge Evans of the Court of Appeals for the Seventh Circuit in the case of Guzik v. United States, 54 F.2d 618, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937.

■ The fourth error assigned is that the Court erred in refusing to allow defense witness, E. J. Wrigley, an accountant, to testify that on the basis of the testimony taken at the trial and a talk with the defendant that the defendant owed no income tax to the United States and therefore could not be guilty of a crime. In effect, the defendant offered to substitute Mr. Wrigley for the jury. It was the jury's function to determine from all the evidence in the case whether defendant actually had income substantially in excess of that reported. It was for the jury and not a so-called expert witness to draw the inferences from the testimony introduced. The jury was instructed as to the legal principles governing circumstantial evidence. No exception was taken to those instructions. The proposed testimony of Mr. Wrigley was not in the nature of expert testimony which the Court ordinarily would allow.

■ The fifth error assigned is in support of defendant's motion for judgment of acquittal. The defendant asked the Court to make certain mathematical calculations and determine as a matter of law that no case had been established against the defendant. There was sufficient evidence in this case for the jury to determine under all the circumstances that income substantially in excess of that reported had actually been received. Consequently, since it was a jury question, the Court was powerless to act in that regard.

■ The final assignment of error challenges the correctness of the Court's admission of evidence obtained from the Selective Service files of this defendant regarding his earnings and dependency status at the times above referred to, 1940 and 1943. The problem raised in this assignment is extremely technical and difficult. The question presented is "Do the Selective Service Laws and Regulations thereunder prohibit the use of information contained in a registrant's file for any purpose other than prosecution for violation of the Selective Service Act?"

The earliest pertinent regulation is contained at Title 32-National Defense, c. VI, Selective Service, Federal Regulation Supplement 1943, Section 605.31 et seq., which reads as follows:

"Except as hereinafter in the regulations in this part provided, the information in a registrant's file shall be confidential insofar as it relates to the following subjects:

"(a) His earnings or income.

"(b) His dependency status.

"(c) His physical or mental condition.

"(d) His court record.

"(e) His previous military service."

Regulation 605.32 reads as follows:

"No information shall be confidential as to the persons designated in this section, and any information may be disclosed or furnished to or examined by such persons, namely:

"(a) The registrant, or any person having written authority from the registrant.

"(b) The members and clerical and stenographic employees of the local board, medical advisory board, or board of appeal, the examining physician or examining dentist, and the government appeal agent, dealing with the registrant's case; proper representatives of the State Director of Selective Service or the Director of Selective Service; *United States Attorneys and their duly authorized representatives."* (Emphasis supplied.)

Further, Regulation 605.35 provides:

"The fact that dependency has been claimed and the names and addresses of the claimed dependents shall not be confidential and may be disclosed or furnished."

The 1944 Supplement makes no change in these regulations nor do the 1945 and 1946 Supplements. The regulations were completely rewritten in 1947. Under date of April 2, 1947, Regulation 606.5 provides that no information contained in a registrant's file shall be confidential as to the persons designated in this section, and any information may be disclosed or furnished to or examined by certain persons, including United States Attorneys and their duly authorized representatives.

This was unchanged in an amendment of July 25, 1947, but an amendment of October 15, 1947 provides that the information might be furnished to any agency, official, or employee of the United States, or any State or subdivision thereof, but only when and to the extent specifically authorized in writing by the Director.

Certain other changes were made in the regulations regarding subpoena of records. Regulation 606.7 provides that no records of a registrant's file, or any part thereof, should be produced in response to the subpoena or summons of any court without the consent, in writing, of the registrant concerned, or of the Director of Selective Service.

The 1949 Edition of the Regulation contains similar provisions. The pertinent provisions appear in Regulation 1670. Regulation 1670.5 provides that all records of the Selective Service shall be confidential except as otherwise provided in that regulation.

Regulation 1670.17 provides that all records of a registrant may be produced in response to a subpoena in a proceeding arising out of the Selective Service Act of 1948, 50 U.S.C.A. Appendix, § 451 et seq., and otherwise may be produced only with the consent, in writing, of the registrant concerned, or of the Director of Selective Service.

Regulation 1670.31, however, provides that information contained in records in a registrant's file may be disclosed or furnished to, or examined by, personnel of an agency of the United States designated in the section with this limitation:

"Any information obtained under the provisions of this section by an agency of the United States shall, without exception, be used solely for the purposes of such agency and shall not be given to any other agency or person, and no person shall use any such information for any purpose other than for

the purposes of the agency which obtained the information."

Under subsection (b) (2) (v), all information contained in records in a registrant's file may be disclosed or furnished to, or examined by, a United States Attorney or his duly authorized representative.

This brings us to a consideration of the meaning of the regulation which provides for use of the information obtained for the purpose of the agency obtaining it. Certainly, the primary duty of a United States Attorney is to uphold and enforce the laws of the United States. Defendant argues that the language of Judge Watson in the case of Federal Life Insurance Co. v. Holod, D.C., 30 F.Supp. 713, prohibits the disclosure of such records as confidential in all cases. I do not so read the case. This was an action between private parties in which the United States had no interest and involved an insurance company seeking to obtain information in a registrant's file in a proceeding against the registrant. The case is certainly not authority for the proposition advanced.

Defendant also cites the case of Mc-Glothan v. Pennsylvania R. R. Co., 3 Cir., 170 F.2d 121, wherein Judge Kalodner in a case involving records of the Veterans Administration held that the regulations themselves provided that records of the Veterans Administration were subject to subpoena by a United States Court to be produced in any suit or proceeding therein pending. Consequently, under the facts of that case, it is no authority for the proposition advanced by the defendant herein.

Defendant also cites Graham v. Squier, 9 Cir., 132 F.2d 681 contending that that case supports the proposition that on a proper claim of privilege and constitutional immunity from testifying against himself a Selective Service questionnaire marked confidential is inadmissible in evidence. The court never reached that question since the admission there was without objection by the defendant.

Finally, defendant cites the case of Young v. Terminal R. R. Ass'n of St. Louis, D.C., 70 F.Supp. 106. The only point passed on in that case was the plaintiff's statement, while testifying, that he had no objection to use in evidence of his Selective Service physical examination records constituted when the testimony was reduced to shorthand and transcribed "written authority" for use of his file. It is not authority for the proposition that a United States Attorney is precluded from "use" of the file under the applicable regulation.

I have been unable to find any case directly in point. The latest amended regulation made no change in the 1949 version. It is thoroughly understandable as to why matters contained in a Selective Service registrant's file should not be public documents and strict limitation should be placed on the disclosure of such records, particularly in matters affecting private interests. However, except for a short period, these records have by the regulation itself been made available to United States Attorneys. The 1949 Regulation which is in effect at this time provides not only for the furnishing of the information but for the use of it by the agency involved. In view of this provision, the confidential nature of it is destroyed. It is available for any use of the agency. I hold, therefore, that there was no error in the admission in evidence of the pertinent parts of the registrant's file showing his claimed dependency status and his claimed rate of wages as of the time the questionnaire and statements were submitted to the Selective Service.

This case must be viewed in its entire context. We are not dealing here with the ordinary business man. Admittedly, this defendant was engaged in an illegal enterprise and the evidence clearly illustrates that he had available to him unexplained cash sums well in excess of income reported. It was the jury's function under proper instructions to determine whether his actual income was greater in amount than that which he showed in his income tax returns. After a very careful consideration of the evidence, the jury determined that for the years 1948 and 1949 his returns were false and fraudulent. Since the Court had of necessity to submit that question to the jury, motion for judgment of acquittal cannot be granted.

The reasons assigned and relied upon by the defendant for a new trial have been discussed fully above and I hold them to be without legal merit. The motion for a new trial will be dismissed.