T.C. Memo. 2011-40

UNITED STATES TAX COURT

JIN LONG PAN AND BAO QIONG CHEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23497-07.          Filed February 14, 2011.

Robert Nizewitz (specially recognized) and <u>Stephen K. Seung</u>,
for petitioner Jin Long Pan.

<u>Diana P. Hinton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and accuracy-related penalties as
follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 2004 | $127,347 | $25,469 |
| 2005 | 86,526 | 17,305 |

The issues for decision are: (1) Whether petitioners had unreported income for 2004 and 2005; and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a)[1] for 2004 and 2005.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in New York when they filed their petition.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent determined that petitioners are liable for self-employment tax on the unreported income for 2004 and 2005. Jin Long Pan (petitioner) introduced no evidence at trial, nor did he argue on brief, that he is not liable for self-employment tax. As a result, petitioner is deemed to have conceded this issue. See Rules 142(a), 149(b); Burris v. Commissioner, T.C. Memo. 2001-49.

Respondent's determinations with respect to petitioners' claimed earned income credits under sec. 32 and personal exemption deductions under sec. 151 are automatic adjustments that will be resolved by our decision of the primary issue (i.e., whether petitioners had unreported income), and computations shall be made under Rule 155.

Petitioner and his wife[3] filed joint Federal income tax returns for 2004 and 2005 on which they reported gross income of $16,450 and $18,230, respectively. Petitioner stated "cook" as his occupation on both returns and "housewife" as his wife's occupation on the 2004 return and "labor" on the 2005 return.

Foxwoods Resort Casino

During the years at issue petitioner traveled frequently to Foxwoods Resort Casino (Foxwoods) in Connecticut to gamble. Petitioners' 2004 and 2005 returns became the subject of examination after respondent received numerous currency transaction reports (CTRs) from Foxwoods showing that petitioner had purchased more than $800,000 in casino chips in 2004 and 2005 combined.[4]

---

[3] On Mar. 11, 2010, the Court granted respondent's motion to dismiss for lack of prosecution and to strike petitioner's wife, Bao Qiong Chen, from this case. The Court will enter a decision as to petitioner Bao Qiong Chen consistent with the decision to be entered as to petitioner Jin Long Pan.

[4] Casinos are required to file CTRs with the Internal Revenue Service (IRS) when a patron purchases (or redeems) more than $10,000 in chips with cash within a 24-hour period. See 31 C.F.R. sec. 103.22(b)(2) (2010). When a patron exceeds the CTR reporting threshold, he is required to show identification to a casino employee. Chris Dowds, who works in Foxwoods' accounting department, was generally unfamiliar with what forms of identification are acceptable on the casino floor for CTR reporting but stated that it may be possible for a patron to show a "Dream Card", discussed infra, for identification purposes. A patron's Dream Card account contains most of the information that is required to be reported on a CTR (e.g., name, address, and driver's license number).

In addition to keeping track of its patrons' buy-ins and redemptions for CTRs, Foxwoods keeps detailed computer records of its patrons' gambling activities for purposes of its rewards program. Patrons can sign up for and receive a free rewards card (Dream Card) to use each time they gamble at Foxwoods. Patrons accumulate points on their Dream Cards based on how much they play at the casino and can redeem their points for free food, beverages, and tickets to shows. Each Dream Card holder is assigned an identification number that is used to track that patron's activity at the casino.

The Audit

IRS Revenue Agent Daniel Lorber (Mr. Lorber) audited petitioners' 2004 and 2005 returns. During his examination he reviewed the following CTRs related to petitioner's cash transactions at Foxwoods:

| Date | Purchases | Redemptions | Complimentary Expenses |
|---|---|---|---|
| 4/3/04 | $15,000 | -0- | $300 |
| 4/3/04[1] | 15,000 | -0- | 300 |
| 4/17/04 | 15,000 | -0- | -0- |
| 6/10/04 | 13,200 | -0- | -0- |
| 8/21/04 | 21,500 | -0- | -0- |
| 8/31/04 | 19,000 | -0- | 450 |
| 9/1/04 | 11,000 | -0- | -0- |
| 9/3/04 | 20,500 | -0- | -0- |
| 9/4/04 | 19,950 | -0- | -0- |
| 9/21/04 | 15,200 | -0- | -0- |
| 10/5/04 | 17,980 | -0- | -0- |
| 10/6/04 | 10,500 | -0- | -0- |
| 10/15/04 | 8,000 | $15,500 | -0- |
| 10/27/04 | 12,000 | -0- | 450 |
| 10/30/04 | 7,000 | 12,400 | 450 |
| 11/3/04 | 7,000 | 14,000 | -0- |

| Date | Purchases | Redemptions | Complimentary Expenses |
|---|---|---|---|
| 11/6/04 | 24,000 | 10,515 | 450 |
| 11/10/04 | 29,675 | 15,000 | 450 |
| 11/11/04 | 50 | 18,025 | -0- |
| 11/13/04 | 28,000 | -0- | -0- |
| 11/14/04 | -0- | 21,025 | 450 |
| 11/15/04 | 9,000 | 12,200 | 450 |
| 11/17/04 | 14,000 | 21,000 | 450 |
| 11/20/04 | 20,000 | -0- | 450 |
| 11/24/04 | 11,000 | -0- | -0- |
| 11/26/04 | 10,100 | -0- | -0- |
| 11/29/04 | 13,000 | -0- | -0- |
| 11/30/04 | 17,500 | -0- | -0- |
| 12/7/04 | 32,500 | -0- | -0- |
| 12/8/04 | 27,100 | -0- | -0- |
| 12/11/04 | 15,060 | -0- | -0- |
| 12/12/04 | 29,500 | -0- | -0- |
| 12/13/04 | 27,700 | -0- | -0- |
| 2004 Totals | 536,015 | 139,665 | 4,650 |

| Date | Purchases | Redemptions | Complimentary Expenses |
|---|---|---|---|
| 1/1/05 | $13,000 | [2]$10,000 | -0- |
| 1/7/05 | 35,700 | -0- | -0- |
| 1/8/05 | -0- | 14,000 | -0- |
| 1/13/05 | 12,000 | 12,450 | $450 |
| 1/20/05 | 12,000 | -0- | -0- |
| 1/21/05 | 20,600 | -0- | 450 |
| 1/25/05 | -0- | 11,025 | 500 |
| 1/26/05 | 14,000 | -0- | -0- |
| 1/27/05 | 17,000 | -0- | 500 |
| 4/29/05 | 31,000 | -0- | -0- |
| 5/8/05 | 12,160 | -0- | -0- |
| 6/7/05 | 13,400 | -0- | -0- |
| 8/12/05 | 12,700 | -0- | -0- |
| 8/16/05 | 12,500 | -0- | -0- |
| 9/19/05 | 24,200 | -0- | -0- |
| 9/23/05 | 14,200 | -0- | -0- |
| 10/29/05 | 36,000 | -0- | -0- |
| 12/16/05 | 15,000 | -0- | 450 |
| 12/21/05 | 6,700 | 12,155 | -0- |
| 12/24/05 | 12,500 | -0- | -0- |

| 12/30/05 | 13,300 | -0- | -0- |
|---|---|---|---|
| 12/31/05 | 19,800 | -0- | -0- |
| 2005 Totals | 347,760 | 59,630 | 2,350 |

[1] Respondent received a duplicate CTR for 4/3/04 and mistakenly included it in his calculations.

[2] According to the CTR for 1/1/05, petitioner received $10,000 in complimentary expenses. This is inconsistent with Foxwoods' records of petitioner's gambling activity (patron data log), discussed infra. We find that the $10,000 should have been reported as a redemption.

Mr. Lorber and petitioner's counsel, Stephen Seung (Mr. Seung), agreed to meet in January 2007 to discuss the audit. Mr. Lorber requested that petitioner provide for review at the meeting documentation of any cash petitioner received from nontaxable sources, such as loan documents or promissory notes. Petitioner provided no documents in response to this request.

During their meeting Mr. Lorber asked Mr. Seung how petitioner got the money to make the purchases. Mr. Seung explained that petitioner had purchased some of the chips with recycled money (i.e., he used prior casino winnings to make the purchases) and that some of the CTRs were erroneously attributed to petitioner. With respect to the latter claim, Mr. Seung contended that petitioner sometimes lent his Dream Card to his friends in order to accumulate additional points while he was traveling out of the country. Mr. Seung told Mr. Lorber that he would provide him with petitioner's passport to prove that petitioner could not have made some of the purchases, but Mr. Seung did not do so during examination.

Mr. Lorber sent several information document requests (IDRs) to petitioner requesting the names of any individuals who borrowed petitioner's Dream Card, bank statements, and documentation that petitioner had received money from nontaxable sources.  Petitioner never provided any of the requested documentation.

Reconstruction of Petitioner's Income

Mr. Lorber determined that petitioner had unreported income for 2004 and 2005 by reconstructing petitioner's income using the cash expenditures method.  In doing so, he assumed that petitioner had income for each of 2004 and 2005 at least equal to that year's "net-cash expenditures" at Foxwoods.[5]  Using the CTRs as his guide, Mr. Lorber determined petitioner's net cash expenditures for each year by aggregating that year's casino chip purchases and reducing the total by that year's casino chip redemptions and complimentary expenses.[6]  He then reduced each year's net cash expenditures by petitioner's known financial resources (net wages, salaries, gross receipts, and interest) and Federal income tax refunds to determine petitioner's unreported

_____

[5]  Respondent determined that petitioner's gambling activity resulted in net losses for 2004 and 2005.  This has no impact on respondent's computations because gambling losses are deductible only to the extent of gambling winnings.  See sec. 165(d).

[6]  Mr. Lorber reduced the chip purchases by redemptions under the presumption that petitioner would use the cash received from the redemptions to purchase chips at a later date.

income.  The following chart summarizes Mr. Lorber's calculations:

|  | 2004 | 2005 |
|---|---|---|
| CTRs | | |
| Purchases | $536,015 | $347,760 |
| Redemptions + "Comps" | -144,315 | -61,980 |
| Net cash expenditures | 391,700 | 285,780 |
| | | |
| Net Income | | |
| Net wages/salary | 15,117 | 8,377 |
| Gross receipts | -0- | 9,008 |
| Interest income | 50 | 22 |
| | 15,167 | 17,407 |
| | | |
| Tax Refunds | | |
| Prior year refund | 968 | -0- |
| Federal refund | 2,806 | 3,998 |
| | 3,774 | 3,998 |
| | | |
| Unreported income[1] | 372,759 | 264,375 |

[1] Unreported income = net cash expenditures - net income - tax refunds.

Respondent issued petitioners a notice of deficiency based on Mr. Lorber's calculations.[7]

_____

[7] After respondent issued the notice of deficiency Foxwoods provided respondent with a log of petitioner's daily gambling activities as recorded by the casino floor employees.  The log includes information about petitioner's daily buy-ins, estimated wins/losses, average bet, amount of time spent gambling each day, and reward and use of complimentary expenses, among other information.  According to the log, petitioner had buy-ins of $764,205 and $580,210 in 2004 and 2005, respectively.  The substantial discrepancy between the totals from the CTRs ($536,015 and $347,760) and the log is attributable to the fact that the casino files CTRs only for transactions over $10,000, whereas the log monitored all of petitioner's purchases. Respondent, however, did not seek an increased deficiency on the basis of this information.

Before trial petitioner presented his passport to respondent, establishing to respondent's satisfaction that petitioner was out of the country and could not have made the transactions reported in 11 of the CTRs (10 in 2004 and 1 in 2005). Accordingly, respondent has stipulated that petitioner did not make purchases on those 11 dates,[8] on which purchases totaled $198,460 and $13,400 in 2004 and 2005, respectively.

In his pretrial memorandum petitioner claimed that his casino chip purchases were financed by a loan he obtained from the "Fukkianese community" and that he would testify to this effect. However, petitioner failed to show up for trial. Petitioner's counsel Robert Nizewitz tried the case in petitioner's absence.

## OPINION

### I. Burden of Proof and Burden of Production

As a general rule, the taxpayer bears the burden of proving the Commissioner's deficiency determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) and (2), however, provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if (1) the taxpayer

---

[8] Respondent has stipulated that petitioner was not at the casino on the following dates: Apr. 17, Nov. 24, Nov. 26, Nov. 29, Nov. 30, Dec. 7, and Dec. 8, 2004, Dec. 11 through 13, 2004, and June 7, 2005.

introduces credible evidence with respect to such issue and (2) the taxpayer satisfies certain other conditions, including cooperation with the Government's requests for witnesses, information, and documents. See also Rule 142(a)(2). The burden is on the taxpayer to show that he satisfied these prerequisites. See Richardson v. Commissioner, T.C. Memo. 2005-143; H. Conf. Rept. 105-599, at 240, 242 (1998), 1998-3 C.B. 747, 994, 996.

Additionally, section 6201(d) provides that if a taxpayer asserts a reasonable dispute with respect to the income reported on an information return and fully cooperates with the Secretary (including providing, within a reasonable time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information in addition to such information returns.

Petitioner was unresponsive to Mr. Lorber's repeated requests for documentation throughout the examination. Petitioner offered various explanations in response to Mr. Lorber's inquiries, but failed to produce any documentation to corroborate these claims even after agreeing to do so. Mr.

Lorber also sent several IDRs to petitioner that petitioner failed to respond to.[9]

On the basis of the facts and circumstances, we hold that petitioner has failed to fully cooperate with respondent's reasonable requests for information and documentation. Accordingly, petitioner bears the burden of proof and respondent does not have the burden of producing information in addition to the CTRs. See secs. 6201(d), 7491(a); Rule 142(a).

II. Unreported Income

Gross income includes all income from whatever source derived. Sec. 61(a). Taxpayers are required to maintain adequate records of taxable income. Sec. 6001. When a taxpayer fails to keep sufficient records to enable the Commissioner to determine his correct tax liability, the Commissioner may compute the taxpayer's income by any method that clearly reflects income. See secs. 446(b), 6001; Sutherland v. Commissioner, 32 T.C. 862 (1959). The Commissioner's reconstruction of a taxpayer's income need only be reasonable in light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989).

Respondent used the cash expenditures method to reconstruct petitioner's income. The use of the cash expenditures method of

---

[9] Although petitioner eventually showed respondent his passport, petitioner did so after failing to provide his passport to Mr. Lorber as he had agreed to do.

computing income is a well-established method of determining a taxpayer's unreported income. United States v. Johnson, 319 U.S. 503 (1943); United States v. Citron, 783 F.2d 307, 310 (2d Cir. 1986); Taglianetti v. United States, 398 F.2d 558 (1st Cir. 1968), affd. 394 U.S. 316 (1969); United States v. Caserta, 199 F.2d 905 (3d Cir. 1952).

The cash expenditures method assumes that the amount by which a taxpayer's cash expenditures during a taxable year exceed his known sources of income for that period is taxable income, unless the taxpayer can show that his expenditures were made from some nontaxable source of funds. DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). Accordingly, the relevant inquiry is whether any expenditures in excess of reported income can be attributed to assets available at the beginning of the relevant period or to nontaxable receipts, such as loans, gifts, or inheritances. Petzoldt v. Commissioner, supra at 695.

Petitioner did not introduce any evidence at trial to demonstrate that the cash purchases at Foxwoods were made with cash from nontaxable sources. Rather, he argues that because respondent has conceded that 11 CTRs were erroneously attributed to him, the remaining CTRs are unreliable and cannot be used as the basis for reconstructing his income. We disagree.

Respondent's concession demonstrates only that petitioner lent his Dream Card to someone on 11 days when he was traveling

so that he could accumulate additional points.  Petitioner has

introduced no evidence to dispute the accuracy of the remaining

44 CTRs, and therefore we accept respondent's determinations with

the following adjustments:

|  | 2004 | 2005 |
|---|---|---|
| CTRs |  |  |
| Purchases[1] | $521,015 | $347,760 |
| Redemptions + "Comps" | -144,015 | -61,980 |
| Conceded CTRs | -198,460 | -13,400 |
| Net cash in | 178,540 | 272,380 |
|  |  |  |
| Net Income |  |  |
| Net wages/salary | 15,117 | 8,377 |
| Gross receipts | -0- | 9,008 |
| Interest income | 50 | 22 |
|  | 15,167 | 17,407 |
|  |  |  |
| Tax Refunds |  |  |
| Prior year refund | 968 | -0- |
| Federal refund | 2,806 | 3,998 |
|  | 3,774 | 3,998 |
|  |  |  |
| Unreported income | 159,599 | 250,975 |

[1]  We corrected a computational error that resulted from
Foxwoods' filing two CTRs for Apr. 3, 2004, reporting purchases
of $15,000 and a cashout of $300.  Accordingly, we have reduced
the purchases total by $15,000 and the redemptions + "comps"
total by $300.

Accordingly, we conclude that petitioner had unreported

income of $159,599 and $250,975 for 2004 and 2005, respectively.

III. Section 6662(a)

Respondent determined that petitioner is liable for section

6662(a) accuracy-related penalties for 2004 and 2005.[10]  Pursuant

---

[10]  Respondent determined that petitioner's underpayments
(continued...)

to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000. See sec. 6662(d)(1)(A). The burden of production is on respondent to produce evidence that it is appropriate to impose the relevant penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

The record shows that petitioner substantially understated his Federal income tax for 2004 and 2005.[11] Accordingly, we find that respondent has met his burden of production. The accuracy-

---

[10](...continued)
for 2004 and 2005 are attributable to (1) negligence or disregard of rules and regulations and (2) a substantial understatement of income tax. Because we find that petitioner substantially understated his Federal income tax for 2004 and 2005, we need not decide whether petitioner's underpayments are attributable to negligence or disregard of rules or regulations. See sec. 6662(b).

[11] Although the exact amount of the understatement cannot be determined until after the Rule 155 computation, petitioner's failure to report income of $159,599 for 2004 and $250,975 for 2005 will result in substantial understatements of income tax. See sec. 6662(d)(1)(A).

related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer shows that he acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448.  Petitioner offered no evidence that he acted with reasonable cause and in good faith.

Accordingly, we hold that petitioner is liable for section 6662(a) accuracy-related penalties for 2004 and 2005 which shall be computed based on the underpayments of tax computed under Rule 155.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.  To reflect the foregoing,

Decision will be entered

under Rule 155.